[No. 13866. In Bank. — August 27, 1889.]

# WILLIAM PROLL, PETITIONER, *v.* JOHN P. DUNN, CONTROLLER OF STATE, RESPONDENT.

CONSTITUTIONAL LAW — APPROPRIATIONS BY LEGISLATURE — MINING BUREAU — MANDAMUS. — The act of March 14, 1889, appropriating the sum of one hundred thousand dollars for the support and maintenance of a mining bureau, does not conflict with any constitutional provision, and is not objectionable because it fails to state specifically on what fund the warrant is to be drawn, or that the money is appropriated out of any moneys in the treasury not otherwise appropriated; and *mandamus* will lie to compel the controller of state to draw his warrant on the general fund for supplies furnished to the mining bureau, pursuant to the act, the demand for which has been approved and audited by the board of trustees of the mining bureau and by the state board of examiners.

APPLICATION to the Supreme Court for a writ of mandate to the controller of state. The facts are stated in the opinion of the court.

*Pillsbury & Blanding,* for Petitioner.

An appropriation of money by the legislature need not be specific, or anything more than a general setting apart of money for a given object. (*State* v. *Bordelon,* 6 La. Ann. 68; *Ristine* v. *State,* 20 Ind. 328.)

*Langhorne & Miller,* for Respondent.

The legislature must fix the fund out of which an appropriation is to be made. (*Fowler* v. *Pierce,* 2 Cal. 167; *McCauley* v. *Brooks,* 16 Cal. 28; *Stratton* v. *Green,* 45 Cal. 151; *Marshall* v. *Dunn,* 69 Cal. 223; *Baggett* v. *Dunn,* 69 Cal. 75.) The act is void, because it does not even specify that the money shall be paid out of the treasury.

FOX, J. — This is an application by petitioner for a peremptory writ of mandate, directing the respondent, state controller, to draw his warrant in favor of the petitioner for the sum of $297.75, alleged to be due petitioner for supplies furnished to the state mining bureau for the forty-first fiscal year. The demand has been duly

approved and audited by the board of trustees of said mining bureau and by the state board of examiners, and it is claimed that it is payable out of an appropriation provided for by an act of the last legislature, approved March 14, 1889, and entitled "An act making an appropriation for the support and maintenance of a state mining bureau for the forty-first and forty-second fiscal years." Said act, omitting the title and enacting clause, reads as follows:—

"SEC. 1. The sum of one hundred thousand dollars is hereby appropriated for the support and maintenance of the mining bureau, created under an act entitled 'An act to provide for the establishment and maintenance of a mining bureau,' approved April 16, 1880, and the act supplementary thereto, approved March 21, 1885, and at least seventy per cent of this appropriation shall be used for geological work in the field.

"SEC. 2. Not more than one half of the said sum appropriated under this act shall be expended during the forty-first fiscal year.

"SEC. 3. This act shall take effect immediately." (See Stats. 1889, p. 149.)

The case turns upon the question of the sufficiency or insufficiency of this act to authorize the controller to draw his warrant for moneys expended under the appropriation therein attempted to be made.

The contention of the respondent is, that the act is insufficient, because the appropriation attempted to be made is not specific within the meaning of the constitution, the statutes applicable to the controller's office and the revenue system, and the previous decisions of this court.

The only provision of the constitution relating to the subject to which our attention has been called, or which we have been able to find, is that found in article 6, section 22. That part of the section bearing upon this question reads as follows: "No money shall be drawn

from the treasury but in consequence of appropriations made by law and upon warrants duly drawn thereon by the controller." Three other sections of the same article refer to the subject of appropriations, section 16 providing that "if any bill presented to the governor contains several items of appropriation of money, he may object to one or more items while approving other portions of the bill." Section 29 provides that "the general appropriation bill shall contain no item or items of appropriation other than such as are required to pay the salaries of the state officers, the expenses of the government and of the institutions under the exclusive control and management of the state." And section 34 provides that "no bill making an appropriation of money, except the general appropriation bill, shall contain more than one item of appropriation, and that for one single and certain purpose, to be therein expressed."

This act does not conflict with nor fall short of the requirements of either of these constitutional provisions. There is no provision in the constitution providing or prescribing any particular form of words in which an appropriation shall be made, except that it shall be made by law. Neither is there any provision in the constitution prescribing the duties of the controller in the matter of drawing warrants upon the treasury, except as above quoted.

The duties of the controller are defined by part 3, title 1, chapter 3, article 6, of the Political Code. The first section of that article (section 433) has twenty-one subdivisions, each specifying some special duty of that officer. Subdivision 17 is the only one which need to be considered in this case. It reads: "To draw warrants on the treasurer for the payment of moneys directed by law to be paid out of the treasury; but no warrant must be drawn unless authorized by law, and upon an unexhausted specific appropriation provided by law to meet the same. Every warrant must be drawn upon the

fund out of which it is payable, and specify the service
for which it is drawn, when the liability accrued, and
the specific appropriation applicable to the payment
thereof."

Section 436 is a part of the same article, and reads:
"All warrants for claims which have been audited by
the board of examiners and filed in his office must be
drawn in the order of the numbers which have been
placed upon them by that board."

Article 18 of the same chapter provides for the organ-
ization, powers, and duties of the board of examiners.
In that article, at section 660, it is provided that "any
person having a claim against the state for which an
appropriation has been made may present the same to
the board in the form of an account or petition, and the
clerk of the board must date, number, and file such
claim, and the board must allow or reject the same in
the order of its presentation. The board may for cause
postpone action upon a claim for not exceeding one
month." Section 661: "If the board approve such
claim, they must indorse thereon, over their signatures,
'Approved for the sum of ——— dollars,' and transmit the
same to the office of the controller of state; and the con-
troller *must draw his warrant* for the amount so approved
in favor of the claimant or his assigns, in the order in
which the same was approved."

No point is made that this claim has not been prop-
erly presented to and approved by the board of exam-
iners and filed with the controller.

Other sections of the article provide for the action to
be taken by the board of examiners when claims are pre-
sented, for which no appropriation has been made, or
where the appropriation has been exhausted, but these
do not contemplate any action by the controller on such
ground; the only further provision in regard to his pow-
ers and duties in that regard being that found in section
672, where it is provided that he shall not draw his war-

rant for any claim unless it has been approved by the
board, except in certain cases of exemption from that
rule, of which this is not one, when he may draw his
warrant without the action of the board. It is his duty
to keep an account under the head of each specific ap-
propriation, showing at all times the unexpended balance
of such appropriation. (Sec. 433, subd. 7.) And it is
the duty of the board, who have the right at any time
to call upon him for information, and to examine his
books, to keep themselves advised as to the condition of
that account.

It is claimed that the act does not specify upon what
fund the warrant is to be drawn, and as he is required
in every warrant to specify the fund out of which it
is payable, therefore, that it is insufficient. Several
authorities are cited which are claimed to support
the proposition that the act itself must specify the
fund out of which the money is to be drawn, but we do
not think they bear that construction, in the sense in
which it is claimed for it here, and as to the statutes, not
one appropriation act in fifty designates the fund out of
which the money is to be drawn. The majority of all
appropriations are drawn out of a single fund, and that
without any designation in the act as to what fund the
money shall be drawn from.

In *Fowler* v. *Pierce*, 2 Cal. 167, cited by counsel, the
question under consideration in that part of the opinion
from which the quotation was made was whether or not
mandate was the proper remedy. The words quoted by
counsel were not necessary to the determination of that
question, and although the language quoted seems to
assume that the fund out of which the money was pay-
able had been specified in the act referred to, a reference
to the act itself shows that such was not the fact in any
sense other or different from that found in the act under
consideration here. The case, as a whole, is against rather
than in favor of the position taken by respondent.

In *McCauley* v. *Brooks*, also cited by respondent (16 Cal. 24), there was nothing in the act designating the fund out of which the money was to be drawn. The language of the act there was: "Appropriated out of any money in the treasury not otherwise appropriated." These words constitute no designation of "the fund," in the sense in which that term is applied in this objection.

By reference to the act referred to in *Stratton* v. *Green*, 45 Cal. 149 (the act creating a board of tide-land commissioners, Stats. 1869–1870, p. 541), it will be seen that it provided for the incurring of large expenses and salaries, and that the controller should draw his warrant upon the general fund for the payment of the same, but neither in that act, nor in any other, did the legislature make any appropriation out of the general fund, or any other fund, for the payment of those expenses or salaries. No attempt was made to appropriate money for that purpose, and the mandate was in that case refused for want of appropriation.

*Baggett* v. *Dunn*, 69 Cal. 75, was a case where the claim was for a salary,—a claim which was not required to be presented to the board of examiners. The controller refused to draw his warrant, because no appropriation had been made for the payment of the salary for that year, and the court sustained him.

In *Marshall* v. *Dunn*, 69 Cal. 223, the warrant was refused because the appropriation was exhausted, and the court sustained the ruling.

Neither the constitution nor the code requires that an appropriation act shall specify the fund out of which the appropriation shall be paid, nor is it usual in appropriation acts to do so. If such a specification is required, the wheels of the government ought long since to have stopped, for out of many acts which we have examined, including the general appropriation bills for the current and past years, we find none which make such designation.

It has become, and is the custom in this state, of very
general, but not universal, application, to use the phrase
"appropriated out of any money in the treasury not
otherwise appropriated." But it seems to be mere cus-
tom, not founded upon any constitutional or other legis-
lative requirement. And we learn from the argument
that the controller interprets that phrase to mean "out
of the general fund." We know of no law which au-
thorizes such an interpretation. On the contrary, it
would seem that everything authorized by law to be paid
out of the state treasury is payable out of the general
fund, if not specially made payable out of some specific
fund, as the "school fund," the "interest and sinking
fund," and the like. The truth is, there are not many
separate funds in the treasury, but there are many ap-
propriations, and most of the latter are payable out of
the same fund,—the general fund. The treasurer keeps
an account of the separate funds, while the controller
keeps account of the separate appropriations, as well as
of the separate funds. "Appropriation" and "fund"
are not synonymous terms. All through the statutes
there is a distinction made between them. In the sec-
tion of the Political Code (3713) which provides for the
amount of revenue to be raised (and which is amended
at each session of the legislature), a given amount is
provided for each separate fund, but nothing is said
about appropriations. The amount named for the gen-
eral fund is supposed to be sufficient to meet the aggre-
gate of all the appropriations made for the year, except
such as have been expressly made payable out of some
special fund.

But if the word "fund," as used in subdivision 17, sec-
tion 433, of the Political Code, is synonymous with the
word "appropriation," it only remains to determine
whether there has been an appropriation in this case.

Appropriations are made, and can only be made, by
the legislature. The constitution has prescribed no set

form of words in which it is to be done. All that is required is a clear expression of the legislative will on the subject. It has declared that the sum of one hundred thousand dollars is hereby appropriated,—not more than one half of which shall be expended in the forty-first fiscal year. That appropriation is made for the maintenance of a bureau theretofore established by act of the legislature, and for several years past supported in whole or in part by legislative appropriation. (See Stats. 1883, p. 279; 1885, p. 86; 1887, p. 62.) But, says the controller, it has not designated the fund out of which the appropriation is payable. It did not in any of the former years; nor has it designated the fund out of which the salaries of any of the officers of the state, or the expenses of any of the other bureaus or departments of the government, shall be paid. "It has not said that the money is appropriated out of any moneys in the treasury not otherwise appropriated." What of it? The legislature can make no appropriation except "out of the treasury." The remaining words are not only a form not required by law, but usually a fiction, for at the time of the passage of appropriation bills there is not usually any money in the treasury in excess of existing appropriations, and whenever the legislature makes a new appropriation, it is to be assumed that it will provide funds to meet the same. As said by Chief Justice Field, in McCauley v. Brooks, supra, "appropriations are made in anticipation of the receipt of the yearly revenues."

"An appropriation is the act of setting apart, or assigning to a particular use or person, in exclusion of all others; application to a special use or purpose, as of . . . . money to carry out some public object." (Webster's Dictionary.)

"An appropriation of the money to a specific object would be an authority to the proper officers to pay the money, because the auditor is authorized to draw his warrant upon an appropriation, and the treasurer is

authorized to pay such warrant if he has appropriated money in the treasury." (*Ristine* v. *State*, 20 Ind. 339.)

In this act we have a clear, distinct expression of the legislative will making the appropriation. The words "out of any moneys in the treasury not otherwise appropriated" are not necessary to the expression of that will, or the making of such appropriation. They are in common use in this state, but nowhere made necessary, and are not always used. (See act to provide for improvements of the Deaf, Dumb, and Blind Asylum, Stats. 1889, p. 303; act to provide for a system of irrigation, etc., Stats. 1877–78, p. 634, subd. 1 of sec. 4; act making appropriations for benevolent purposes, Stats. 1875–76, p. 323.) No doubt further examination would disclose many similar omissions. So far as we have observed, they are never used in the acts of Congress. Whether they are in common use in other states, and if so, whether there is a reason for it, we have not time to inquire, nor do we deem it necessary, in the absence of any requirement for their use in this state.

If the word "fund," in the point here made by the controller, and in subdivision 17, section 433, Political Code, is used in its technical sense, as designating the separate funds in the treasury, then the whole history and practice under it in this state from its earliest organization is against the contention now made, that the appropriation act itself must specify the fund upon which the warrant is to be drawn; but if it is used as an alternative for "appropriation," then all difficulty is removed, provided there is a specific appropriation against which the warrant may be drawn, and the case does not differ from all others where the appropriation is not by express words made payable out of some one of the separate funds in the treasury other than the general fund.

The board of examiners have, by their action under sections 660 and 661 of the Political Code, by implication at least, held that in this case there was a specific appro-

priation for the maintenance of the mining bureau, and that this claim was payable out of that appropriation. In this we think the board was correct, and unless the appropriation has been exhausted (of which there is no claim), the controller has no discretion, but is required by law to draw his warrant therefor upon such appropriation.

Let the writ issue as prayed.

BEATTY, C. J., PATERSON, J., THORNTON, J., and MC-FARLAND, J., concurred.