THE STATE OF KANSAS V. PHIL KEENER.

No. 15,779.    (97 Pac. 860.)

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Separation of Governmental Powers—Police Judge—Non-judicial Duties—Legislative Powers.* Although the police judge of a city of the second class exercises judicial functions, he is not a repository of judicial power in the sense of section 1 of article 3 of the constitution, and the legislature has authority to require him to notify the county attorney of the fact of violations of the prohibitory liquor law which come to his notice or knowledge, and to furnish the county attorney the names of the witnesses by whom such violations may be proved, under penalty of a fine and forfeiture of his office.

Appeal from Cherokee district court; CORB A. MC-NEILL, judge. Opinion filed October 10, 1908. Reversed.

*Fred S. Jackson,* attorney-general, and *E. B. Morgan,* county attorney, for The State.

*J. N. Dunbar,* and *Jes. F. Wolfe,* for appellee.

The opinion of the court was delivered by

BURCH, J.: An information was filed against Phil Keener, the police judge of the city of Scammon, a city of the second class, charging him with a violation of the prohibitory liquor law, in that he unlawfully neglected and refused to notify the county attorney of violations of the law within his knowledge and to furnish the names of the witnesses by whom such violations could be proved. The district court quashed the information, and the state appeals. The question presented is the constitutionality of the statute under which the information was filed. It reads as follows:

"It shall be the duty of all sheriffs, deputy sheriffs, constables, mayors, marshals, police judges, and police officers of any city or town having notice or knowledge of any violation of the provisions of this act, to notify the county attorney of the fact of such violation, and to furnish him the names of any witnesses within his knowledge by whom such violation can be proven. If any such officer shall fail to comply with the provisions of this section, he shall upon conviction be fined in any sum not less than one hundred nor more than five hundred dollars; and such conviction shall be a forfeiture of the office held by such person, and the court before whom such conviction is had shall, in addition to the imposition of the fine aforesaid, order and adjudge the forfeiture of his said office. For a failure or neglect of official duty in the enforcement of this act, any of the city or county officers herein referred to may be removed by civil action." (Gen. Stat. 1901, § 2462.)

In support of the judgment of the district court it is argued that the doctrine of the separation of the departments of government into legislative, executive and judicial applies to the organization of cities of the second class; that the police judge of such a city is a judicial officer; that the duties required by the statute

are non-judicial, and can not be forced upon him; and that he can not be punished or deprived of his office for failure to undertake them. This argument derives the power of the legislature to organize police courts and to provide for police judges from section 1 of article 3 of the constitution, which reads as follows:

"The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law."

The section of the constitution quoted is not the true. source of the legislature's authority over the establishing of municipal courts. Such authority comes with the grant to the house of representatives and senate of all the legislative power of the state (Const. art. 2, § 1), which includes power to provide for the organization and government of cities.

It is an elementary principle of constitutional law that restraints upon the power to organize and regulate municipal governments must be found in the constitution or none exists, and the manner in which such power is exercised rests entirely in the discretion of the legislature. (Cooley's Const. Lim., 7th ed., 268.) The only limitations upon this power found in the constitution of this state are that the legislature may not confer corporate power by special act, and must provide for the organization of cities, towns and villages by general law. (Const. art. 12, §§ 1, 5.) There is, therefore, nothing to prevent the legislature from adopting any form of government for the cities of the state which it may deem wisest. In framing municipal charters the legislature, itself a popular body, can scarcely escape the influence of the sentiments and settled habits, customs and practices of the American people; but the problems of modern city government are novel and perplexing, and so far as the constitution is concerned the legislature may vest all the executive, legislative and judicial power of a city in a single person or body

of persons, if it should conclude that plan would best promote the public welfare, or it may apportion the various functions among different officials according to its own judgment of what the public good requires. Mayors' courts have been recognized by this court as lawful under the territorial government (*The State of Kansas v. Young and others*, 3 Kan. 445), and under the present constitution (*Prell v. McDonald*, 7 Kan. 426, 12 Am. Rep. 423).

The principle involved has its foundation in the character and objects of municipal government, which are essentially local. True the government of a city is a matter which in a very important sense concerns the entire state, but the people of that city are the persons primarily affected, and their peculiar local needs and interests are ordinarily disconnected in legal thought from the needs and interests of the people of the whole state, taken collectively.

It is a settled rule of constitutional interpretation that the grant of legislative power to the legislature excludes all other bodies from the exercise of that power. The grant to cities of legislative power respecting their local affairs, to be exercised by means of ordinances, does not contravene this rule, because the regulation of those affairs is not regarded as a part of the state's business.

"It has already been seen that the legislature can not delegate its power to make laws; but fundamental as this maxim is, it is so qualified by the customs of our race, and by other maxims which regard local government, that the right of the legislature, in the entire absence of authorization or prohibition, to create towns and other inferior municipal organizations, and to confer upon them the powers of local government, and especially of local taxation and police regulation usual with such corporations, would always pass unchallenged. The legislature in these cases is not regarded as delegating its authority, because the regulation of such local affairs as are commonly left to local boards and officers is not understood to belong properly to the state." (Cooley's Const. Lim., 7th ed., 264.)

Manifestly local courts erected to enforce local leg-
islation and to carry out schemes of local government
are to be regarded in the same manner. They are not
a part of the state judicial system. The grant of judi-
cial power in article 3 of the constitution is quite anal-
ogous in this regard to the grant of legislative power
in article 2. Judicial power proper was there referred
to, and the courts inferior to the supreme court which
the legislature is authorized to establish are state courts
partaking of this power and forming a constituent part
of the state judicial system. To those courts the con-
stitutional doctrine of the separation of powers applies,
subject to the limitations which have been found to be
necessary and unavoidable in the practical working out
of our scheme of government. But a police court, or-
ganized for purposes of local municipal judicature, is
not a repository of the judicial power referred to in
the constitution any more than a city council is a law-
making body in the sense of the constitution. The
reasoning of Mr. Chief Justice Crozier in the case of
*The State of Kansas v. Young and others,* 3 Kan. 445,
supports this view. He said:

"But it is said that the enforcement of city ordi-
nances is a judicial power, and that by the twenty-
seventh section of the organic act the judicial power
of the territory was vested exclusively in a supreme
court, district courts, probate courts and justices of
the peace. It is true that the administration of mu-
nicipal ordinances is the exercise of a sort of judicial
power, but it is no part of the judicial power contem-
plated by the section referred to. That section refers
to the enforcement of the laws of the territory at
large, and to that only. The courts therein named were
to have the exclusive cognizance of all subjects arising
directly under the laws of the legislature, or at com-
mon law, and in chancery; but it was not intended that
in them alone could power to enforce city ordinances be
deposited. Nor is the creation of municipal courts for
the enforcement of municipal regulations inconsistent
with this section, because the exercise of such power
on the part of the legislature is not only not conferring
judicial power within the meaning of this section, but

is exercising authority over a rightful subject of legislation within the meaning of section 24." (Page 448.)

It may be true that the legislature has created city courts which are also state courts, but the court in question is not one of them, and their status need not now be discussed. From what has been said it follows that the legislature had the right to impose upon the defendant the duties prescribed by the statute quoted, and the information was wrongfully quashed.

The defendant is much exercised over what his attitude might be if a complaint under a city ordinance were lodged with him for a violation of the liquor law which he had reported to the county attorney. It is sufficient to say that his conduct should be the same as in any other case in which he knows all the facts.

The judgment of the district court is reversed, with direction to deny the motion to quash.