[Civil No. 3476.   Filed December 7, 1934.]

[38 Pac. (2d) 315.]

V. C. WIGGINS, as Member of House of Representatives of the State of Arizona, Petitioner, v. JAMES H. KERBY, as Secretary of State of the State of Arizona, Respondent.

Mr. Perry M. Ling, and Messrs. Favour & Baker, for Petitioner.

Mr. James H. Kerby, *in propria persona.*

McALISTER, J.—A petition praying for the issuance by this court of a writ of *mandamus* directing James H. Kerby, Secretary of State, to cause to be printed and distributed the acts of the Regular and the First and Second Special Sessions of the Eleventh Legislature was filed in this court by V. C. Wiggins, a member of that body, and in the exercise of its original jurisdiction in matters of this character the court ordered the alternative writ issued.

The petition alleges in substance that the petitioner is a duly elected member of the House of Representatives of the state of Arizona and that the respondent is the duly elected and acting Secretary of State of the state of Arizona; that section 23 of the Revised Code of 1928 makes it the duty of the latter to, "deliver to the printer, at the earliest day practicable after the final adjournment of each ses-

sion of the legislature, copies of all laws, resolutions and journals, kept, passed, or adopted at such session, superintend the printing thereof, and have proof sheets of the same compared with the originals and corrected''; that section 24 of the Revised Code of 1928 makes it the further duty of the Secretary of State, immediately after publication of the laws, to supply one copy thereof to certain officials designated therein, among whom are the members of the legislature; that the Regular Session of the Eleventh Legislature enacted the general appropriation bill in which it made appropriations for the various departments of the state government for the two fiscal years, beginning July 1, 1933, and ending June 30, 1935, designated respectively as the twenty-second and twenty-third fiscal year, and provided therein as follows for the office of the Secretary of State:

|  | For the 22nd Fiscal Year | For the 23rd Fiscal Year |
|---|---|---|
| "Subdivision 45.  Secretary of State | | |
| For salaries and wages; for printing session laws; for operation; for initiative and referendum expense: | | |
| Total Appropriation ...................... | $20,404.00 | $24,054.00"; |

that by reason of this appropriation there are ample funds available to the respondent with which to pay the expenses of printing and distributing the session laws, and that the performance of this act is enjoined upon him as a duty resulting from his office as Secretary of State but that he has arbitrarily and unlawfully failed and refused to perform it.

In response to the alternative writ the Secretary of State interposed a general demurrer to the petition and answered further by alleging in substance, first, that the legislature did not appropriate sufficient funds for the purpose of printing and distributing the session laws and taking care of the other ex-

penses of his office and, second, that notwithstanding its failure to do this, he had complied with the law requiring him to perform this act by causing copies of the session laws to be typewritten, mimeographed and distributed to those to whom the law directs him to send them. Following a motion to strike a large portion of the answer, the petitioner demurred to it upon the ground that its denials and allegations do not constitute a defense to the petition. A determination of the sufficiency of this pleading will be decisive of the issues presented.

The petition discloses that the Eleventh Legislature made an appropriation to cover the expenses of printing and distributing the session laws, and that the respondent has unlawfully and arbitrarily refused to cause this to be done. These two allegations, when considered in connection with sections 23 and 24, Revised Code of 1928, which prescribe the duties of the respondent incident to the matter of printing and distributing the session laws and subdivision 45 of section 1 of the general appropriation bill, approved March 18, 1933, which sets aside the funds to pay for this work, state a cause of action and render the petition invulnerable to the demurrer interposed to it by the respondent.

We pass to the sufficiency of the answer which is attacked by a general demurrer. Its first material allegation is that the legislature did not provide the funds with which to print the session laws, and this statement, if sustained by the record, would justify the respondent's refusal to have them printed, since an officer upon whom a duty has been imposed by law may not be held responsible for failure to discharge it unless the funds with which to do it, where they are necessary, are provided therefor. Does the record sustain this allegation?

It will be observed that the appropriation for the office of Secretary of State for the two fiscal years, July 1, 1933, to June 30, 1935, is $20,404 for the first and $24,054 for the second, a total of $44,458 for the biennium, and that this sum is to be used for the four following purposes:

"For salaries and wages; for printing session laws; for operation; for initiative and referendum expenses."

Instead of assigning a definite part of this appropriation to each of these four purposes, the legislature thought best to appropriate a lump sum for the entire expense of the office and leave the detail of apportioning it to these several purposes to the head of the office, a method of appropriating funds that obtains throughout the general appropriation bill of that year, though in the case of some of the departments, institutions and offices, a definite sum is allotted to each of the purposes enumerated. By making the appropriation in this manner, "the Legislature," to use the language of the court in *State Board of Health* v. *Frohmiller*, 42 Ariz. 231, 23 Pac. (2d) 941, 942, "has confided to these heads the duty and obligation of maintaining their respective institutions, departments, or offices with the funds assigned them, in the proportions indicated, rather than itself fixing the number of employees and their salaries, or segregating operation into different items, etc., leaving this detail to the institution, department, or office."

While an appropriation for an office or department made in the way this one was leaves with the head of that office or department the detail of apportioning to each of the purposes for which the appropriation is given a definite sum, yet it was the purpose of the legislature that he should use it in a way that would

enable him to discharge the duties of the office as the law requires. When there are charges fixed by general law against an appropriation of this kind, such, for instance, as the salary of the head of an office or department, they should be deducted from the total and the balance used to pay the legal and necessary obligations of the office as they arise until the appropriation is exhausted. In planning how the appropriation should be spent he should, of course, use his best efforts to reduce the expenses of administering his office to such a point that the appropriation will cover the cost of all the necessary duties thereof, but in any event the obligations so incurred must be paid from the appropriation in the order in which they arise, no matter what effect such action may have in exhausting the appropriation.

Section 23, *supra,* makes it the duty of the Secretary of State to cause the session laws to be printed at the earliest date practicable after the final adjournment of each session of the legislature, which occurs more than three months prior to the beginning of the fiscal year for which the appropriation was made, and the Eleventh Legislature, by appropriating a lump sum to him to be used for four distinct purposes, one of which was "printing the session laws," enabled him to discharge this duty, in so far at least as it related to the law of the Regular Session of 1933. And while the amount intended for this particular purpose was not fixed in the appropriation bill but was left to the respondent to decide, it would have become fixed before the beginning of the fiscal year had he, as section 23, *supra,* intends, entered into a contract with a printer for the work. After doing this no alternative other than to set aside the sum agreed upon therefor would have been his. This made it necessary that the amount agreed on for

printing the session laws, along with the $5,000 the law fixed as the salary of the Secretary of State, be deducted from the total appropriation for that office before he estimated or decided how much of the balance should be used for the purpose to which no fixed sums had been allotted, namely, wages, operation and initiative and referendum expenses. This would have left for these purposes from the first year's appropriation $12,404, provided the amount set aside for printing the session laws is the same, or nearly so, that its published acts for some periods back disclose it to have been for those years, $3,000.

While the language, ''printing the session laws'' is broad enough to include the laws of a special session that might be held during the biennium for which the appropriation is made, yet in view of the fact that the Secretary of State cannot know that this will happen, or how extensive would be its work if it did, and of the further fact that any special session could, and perhaps should, provide for printing its own acts, we think it was probably meant to apply to the laws of the regular session only.

The legislature evidently felt that after the $8,000, above mentioned, had been set aside there would be sufficient remaining to take care of those purposes which had no fixed amounts allotted to them, but whether it was insufficient therefor, as respondent contends is true, it is not for this court to decide. The legislature controls the purse strings of the state, hence, it was a matter purely within its discretion and not even the respondent whose duty it was to expend the funds could do otherwise than accept it. Undoubtedly the amount was less than had been appropriated for these purposes by previous legislatures; in fact, it was the intention of that body to reduce to a minimum the expenditures made by state

institutions, departments and offices, including the Secretary, of State. The motive which prompted its passage of an appropriation bill carrying much smaller sums for all departments than theretofore, and the duty resting upon every person connected with the state in an official way to co-operate in bringing about a reduction in the cost of government, were given expression in the following forceful and appropriate language by Chief Justice ROSS in the recent case of *State Board of Health* v. *Frohmiller, supra:*

"Each head of a department, institution, or office knows perfectly well that his appropriation for the twenty-second and twenty-third fiscal years was, for the most part, the same items as for the previous years but considerably reduced in amount on account of the depression and the consequent inability of the property owner to pay his taxes, and he should now do his part to relieve the situation. These departments, institutions, and offices, it should be remembered, are created for the purposes of the state and not for the men who man them. In the operation of government men are necessary, but government exists for the people and not for those who may temporarily administer it. Those who are chosen to govern are honored with power and position and also compensated for their services, and when the Legislature, either through oversight or other misfortune, trusts these officers to spend the funds placed at their disposal for the offices, departments or institutions, we think they should do so honestly, willingly, and economically and in accordance with the legislative intent. The officer must operate within the appropriation given him. He must cut his garment to fit the cloth."

We think it clear that there is no basis for the allegation that no, or even an insufficient, appropriation for printing the session laws of the Regular Session of the Eleventh Legislature was made by that body.

The answer alleges further, however, that, if it be held that he should have had the session laws of the Eleventh Legislature printed out of the appropriation made by that body for this purpose, he has complied with the requirement by causing these laws to be typewritten, mimeographed and distributed as section 24, *supra,* provides, and that this constitutes a printing within the meaning of section 23, *supra,* providing that he shall "deliver to the printer, at the earliest day practicable after the final adjournment of each session of the legislature, copies of all laws, resolutions and journals, kept, passed or adopted at such session, superintend the printing thereof, and have proof sheets of the same compared with the originals and corrected."

Whether the typewritten, mimeographed copies of the laws in question, which respondent caused to be made and distributed, constitutes a printing within any sense of that term it is unnecessary to determine, for even though it does, it is perfectly plain that it was not a printing within the meaning of the legislature, as expressed either in the above excerpt from section 23, or in the expression "printing the session laws," as used in the general appropriation bill of 1933. There cannot exist the slightest doubt as to what the legislature had in mind when it used the term "printer" in the first and "printing" in the second. The session laws have been printed and published in ordinary convenient book size and form and carrying an index since Arizona became a state and long prior thereto, and no question of any nature can arise as to the fact that the members of the legislature had this in mind in both of these instances. If by the term "printing," as it appears in the appropriation bill of 1933, the Eleventh Legislature had meant mimeographing it would undoubtedly

have said so, and, in addition, would have appropriated a very much smaller sum for this purpose. Nothing can be clearer than the fact that mimeographing the laws in question does not constitute a printing within the meaning of this word as used in subdivision 45 of section 1 of the general appropriation bill passed by the Eleventh Legislature. .

It follows that the answer does not state facts constituting a defense and that the demurrer to it should be sustained.

It appearing, therefore, that it is a duty enjoined upon the Secretary of State to cause the session laws of the legislature to be printed as soon as possible after final adjournment of each session, that provision to cover the expense of printing those of the Regular Session of the Eleventh Legislature were provided by that body, and that the Secretary of State refuses to have them printed, it follows that the alternative writ heretofore granted should be made peremptory. Such is the order of the court.

ROSS, C. J., and LOCKWOOD, J., concur.