216 P.2d 726

## EIDE et al. v. FROHMILLER,
### State Auditor.
### No. 5303.

Supreme Court of Arizona.
April 3, 1950.

Fred O. Wilson, Atty. Gen. and Richard C. Briney, As'st. Atty. Gen., for appellants.

Ana Frohmiller, in pro. per.

PHELPS, Justice.

There was submitted to the voters at the general election of November, 1948, an initiative measure known as the Public Employees' Retirement Act of 1948, A.C.A. 1939, § 12-801 et seq. which was adopted by a majority of the voters and was proclaimed to be a law by the Governor of the state on November 22nd of that year. The law has for its purpose two objectives, (1) an improvement of the quality of service rendered by public employees by inducing them to remain in the service continuously over a long period of years; and (2) in consideration thereof to provide a reasonable degree of security for them when they become incapacitated by reason of old age or other physical or mental disability. In order to accomplish this it provides for contributions both by the employees and the state for the creation of a retirement fund to be held in trust by a board of trustees who are charged with the duty of the administration of the fund including the payment of all benefits and costs of administration of the act. The material portions of the act here involved are largely found in sections 23 and 24 thereof, A.'C.A.1939, §§ 12-823, 12-824, which we quote verbatim:

Section 23. Beginning on the effective date, each employee who is a member of the system shall contribute five per cent of compensation earned and accruing on and after said date. This contribution shall be made in the form of a deduction from compensation and shall be made notwithstanding that the compensation paid in cash to such employee shall be reduced thereby below the minimum prescribed by law. Every employee who is a member of the fund shall be deemed to consent and agree to deductions made from his compensation and provided for in this act, and shall receipt in full for salary or compensation, and payment to said employee of compensation less said deduction shall constitute a full and complete discharge and acquittance of all claims and demands whatsoever for the services rendered by such employee during the period covered by such payment except as to the benefits provided for under this act.

"Members shall be permitted to make additional contributions to the fund above the five per cent (5%) rate to increase that part of the retirement benefit provided from accumulated contributions. These additional contributions shall be made in multiples of one-half of one per cent up to a total rate of ten per cent (10%) of compensation for both regular and additional contributions. Any change in the rate of contribution under this provision shall take effect as of the beginning of a fiscal year, and any such rate of additional contribution selected by a member shall remain in force for a period of not less than one (1) year."

"Section 24. Contributions by the state shall be made to meet the requirements of this act and shall consist of annual contributions to the fund of such amounts which, together with contributions made by members and regular interest accretions, will be sufficient to meet the cost of the various annuities and benefits to employees of the state, and the cost of administration, in accordance with the provisions of this act.

"The amounts to be contributed by the state for retirement benefits shall be on an actuarially funded basis covering all service of the employees including service prior to the effective date and service subsequent thereto, in accordance with the determinations of the board upon the recommendations of the actuary. Contributions by the state for death benefits, disability benefits and for administration expenses shall represent the current requirements for these purposes, as determined by the board based upon the experience of the fund.

"There is hereby appropriated annually to the fund from funds of the state not otherwise appropriated, an amount necessary to carry out the provisions of this act. The amount required by the provisions of this act shall be included in each biennial appropriation, and the annual sum so appropriated shall be paid to the board of trustees in the month of July, 1949, and in the month of July of each year thereafter, which sums shall become a part of the fund herein created immediately upon payment thereof.

"Contributions made by the employer under the provisions of this act shall not be considered as a part of the employee's compensation notwithstanding the provisions of any other law."

The act became effective on July 1, 1949 and provides for the appointment of a board of trustees consisting of seven members including the state auditor, state treasurer and state personnel member, the other four to be appointed by the Governor. The board is directed therein to hold its first meeting on August 1, 1949, and every quarter thereafter and provides that the board members shall be compensated for the expenses incurred by them in attending said board meetings.

The members of the board of trustees held their first and second official meetings on July 1, 1949 and July 11, 1949 respectively. Iva Reeves, one of the members of the board residing at Prescott, presented her claim for expenses to the state auditor, appellee herein, for the sum of $11.41 for the meeting of July 1, 1949, and $17.32 for the meeting of July 11, 1949, making a total of $28.73 which claim was rejected by appellee upon the ground that no appropriation had been made therefor. No question was raised by the pleadings or the assignments of error that the expenses were incurred by

attendance at meetings held prior to the date fixed by the act.

This action was brought by appellants in the Superior Court of Maricopa County under the declaratory judgment act for an interpretation of the law and specifically whether the act appropriated funds to meet the expenses of administration, such as the expenses involved in this litigation; and if the court finds that no appropriation has been made in the act itself then to determine whether the appellee should be required to issue a certificate of indebtedness to the said Iva Reeves against the state of Arizona in accordance with the provisions of section 4-309, A.C.A.1939.

The cause was presented to the trial court on motions on behalf of both the appellant and appellee for summary judgment. The trial court held (1) that no valid appropriation was provided for in the act itself; (2) that the legislature having made no appropriation therefor, there were no funds available for the payment of said claim; (3) that the auditor was justified in refusing payment thereof; and (4) that no certificate of indebtedness could lawfully issue under the provisions of section 4-309, supra, for the reason that such a claim does not represent an obligation against the state of Arizona which the law of this state recognizes. Evidently the court based the latter holding on the provisions of section 10-923, A.C.A.1939. The trial court therefore granted motion of appellee for summary judgment and entered judgment accordingly. This is an appeal from that judgment.

There are presented for our consideration the following assignments of error:

1. That the court erred in holding that the claim·of Iva Reeves, member of the board of trustees, drawn under the authority of section 16 of the act [A.C.A.1939, § 12-816] is not a legal claim against the public employees' retirement fund and that no duty devolves upon appellee to draw a warrant for the payment thereof.

2. That the court erred in holding that section 24 of the act does not legally appropriate an amount sufficient for the payment of all claims, expenses or obligations incurred in the operation or administration of the fund.

3. The court erred in holding that the funds contributed by employees are not available for the payment of said claim.

4. The court erred in holding that Iva Reeves was not entitled to a certificate of indebtedness for the amount of her claim under the provisions of section 4-309, A.C.A.1939.

5-6. The court erred in denying appellant's motion for summary judgment and in granting appellee's motion therefor.

7. The court erred in entering judgment in favor of appellee.

The above assignments resolve themselves into two questions for our determination: (1) Was it error for appellee to refuse payment of the claim of appellant, Iva Reeves, out of the retirement fund on hand

consisting exclusively of contributions from employee members of the fund? (2) Was it error for appellee to refuse to issue to appellant a certificate of indebtedness covering said claim?

Section 5, article 9 of our Constitution provides insofar as we are here concerned: "* * * No money shall be paid out of the state treasury, except in the manner provided by law."

Section 4-308, A.C.A.1939, provides: *"Drawing of warrants.*—In all cases of claims duly audited and allowed by the auditor, and of specific appropriations, salaries, pay, or expenses, provided for by law, the auditor shall draw a warrant on the treasurer of the state for the amount as allowed in the form required by law, and notify the state treasurer. No warrant shall be drawn by the auditor or paid by the treasurer unless the money has been previously appropriated; nor shall the whole amount drawn for or paid under one budget item ever exceed the amount appropriated by law for that purpose. * * *"

Section 4-309, A.C.A.1939: *"Certificate to issue where no appropriation.*—In all cases where the law recognizes a claim for money against the state, but no appropriation shall have been made by law to pay the same, the auditor shall audit and adjust the same, if presented to him, and give the claimant a certificate of the amount thereof, under his official seal, if demanded, and shall report the same to the legislature."

Section 10-923, A.C.A.1939, reads as follows: *"Unauthorized obligation.*—No person shall incur, order or vote for the incurrence of any obligation against the state or for any expenditure not authorized by an appropriation and an allotment. Any obligation so raised in contravention of this act shall not be binding against the state but shall be null and void and incapable of ratification by any executive authority to give effect thereto against the state. But every person incurring, or ordering or voting for the incurrence of such obligations, and his bondsmen, shall be jointly and severally liable therefor. Every payment made in violation of the provisions of this act shall be deemed illegal, and every official authorizing or approving such payment, or taking part therein, and every person receiving such payment, or any part thereof, shall be jointly and severally liable to the state for the full amount so paid or received."

If the Employees' Retirement Act appropriated funds for the purpose of carrying out the provisions of the act appellee wrongfully refused to issue her warrant covering appellants' claim. If, on the other hand, the act did not make an appropriation for such purpose then the action of the appellee must be sustained, unless the law requires her to issue a certificate of indebtedness under the circumstances in this case.

If an appropriation was made in the act it is to be found in section 24, supra, in

the following language: "There is hereby appropriated annually to the fund from funds of the state not otherwise appropriated, an amount necessary to carry out the provisions of this act."

We have held repeatedly that if an appropriation is to be paid from the general fund it must fix at least a maximum amount beyond which such appropriation may not go. Tillotson v. Frohmiller, 34 Ariz. 394, 271 P. 867; Crane v. Frohmiller, 45 Ariz. 490, 45 P.2d 955. The attempted appropriation here in question is to be drawn from the general fund.

Measured by the standard above set forth it clearly appears that the retirement act itself fails to appropriate funds with which to carry out its provisions. No specific amount was appropriated, neither was there a maximum amount fixed beyond which the appropriation may not go nor is such amount capable of being ascertained by any mathematical process which would bring it within the maxim: "Id. certum est quod certum reddi potest." There is no method by which the amount attempted to be appropriated can be made certain.

The cases cited by appellant in support of a valid appropriation in the act are distinguishable from the instant case in that the amount of the appropriation thereof not specifically named was held in each case to be capable of ascertainment by mathematical calculation. We have shown above that no such results are obtainable in the instant case but that the amount attempted to be

appropriated resides wholly within the realm of speculation.

Appellants assert that the funds contributed by members, now on hand in the retirement fund, are available for the payment of appellants' claim and argue in support of their position that the whole fund created by the act is one and inseparable and that it is liable for all purposes for which it is created. If we were to assume this to be true the answer is that the whole of a thing only comes into existence after its parts are brought together. The whole of the fund created by the retirement act has not yet come into existence for the reason that the employer has not made its contribution to the fund.

The act imposes upon the state and the member employees alike the duty to make the contributions provided for therein. Until both parties perform their part of this requirement the law cannot function and until both parties make such contributions no fund will be available for the payment of either expense of administration or benefits provided for under the act except, of course, one who withdraws from the service is entitled to a refund of the amount credited to his individual account. This conclusion is based in part upon the following language found in section 24: "Contributions by the state shall be made to meet the requirements of this act and shall consist of annual contributions to the fund of such amounts *which, together with contributions made by members and regular*

134

*interest accretions, will be sufficient to meet the cost of the various annuities and benefits to employees of the state, and the cost of administration, * * *."* (Emphasis supplied.)

A study of the language above quoted clearly indicates a recognition of the fact that the contribution of member employees would be inadequate "to meet the cost of the various annuities and benefits to employees of the state" provided for in the act. Provision was therefore made to augment this fund by contributions from the state to meet such deficit. It seems to logically follow that if the contributions of employee members were considered to be insufficient even to pay the various benefits provided for in the act and that the state would have to contribute an amount sufficient to make up the balance required for that purpose, it is manifest that it was never intended that the fund contributed by the employees should be further depleted by the payment of any part of the cost of administration. On the other hand, it appears to us that it was clearly intended that in addition to the aid required to be given by the state for the payment of benefits under the act the cost of administration in its entirety must be borne by the state, even though the fund is to be treated as one fund for investment purposes.

Other provisions of the act seem to support this view. For example section 17, subsections (c) and (d), A.C.A.1939, § 12-817, subds. c, d, makes it mandatory upon the board of trustees to keep or to maintain separate accounts of individual contributions and to credit the contribution of members to such individual accounts, adding accrued interest thereto at least once each year.

Section 14, A.C.A.1939, § 12-814, provides for a refund of the accumulated contributions of a member upon withdrawal from service before becoming entitled to retirement benefits.

Section 27, A.C.A.1939, § 12-827, provides that members contributing to the retirement fund receive a vested interest in the accumulated contributions to the fund in consideration of which such members are deemed to have agreed to the 5% deduction from their salary or wages for contribution purposes. The latter sections of the act indicate that it was intended to preserve the contribution of employee members for their benefit, relieved from any of the burdens of administration.

If, as claimed by appellant, the portion of the retirement fund now on hand may be used for paying administration expenses it is possible that a large portion of the accumulated contributions of members could be dissipated in defraying administration expenses, thus destroying their vested interest therein and making it impossible to even refund contributions made by members who may wish to withdraw from the service. It would likewise follow that death, disability and retirement benefits could be

defeated if the funds were to be used for administrative purposes over a long period of time if the legislature fails to make appropriations provided for in the act.

 We therefore hold (1) that no legal appropriation was made in the act itself to carry out its purposes; (2) that appellants' claim for administration expense may not be satisfied out of the contributions of employee members; (3) that until an appropriation is made by the state in accordance with the provisions of the act the administrative machinery provided for therein cannot function.

We further hold that since no appropriation has been made to carry out the provisions of the act appellants are not entitled to a certificate of indebtedness to cover said claim under the provisions of section 4-309, supra. This law was enacted in 1912. The legislature enacted section 10-923 as a part of the budget and finance administration act of 1943 which provides in substance that any obligation incurred against the state by any person not authorized by previous appropriation and an allotment is null and void.

Having reached the conclusion that no appropriation has been made by the provisions of the act to pay administration expenses the obligation here involved is not an obligation against the state recognized by law and therefore does not fall within the provisions of section 4-309, supra. We find no error in the record.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.