857 P.2d 1271

Kenneth J. **LARKIN** and Murray W. **Karsten**, individual residents and property taxpayers in Maricopa County, Plaintiffs–Appellees, Cross–Appellants,

v.

**STATE** of Arizona, ex rel. Raymond **ROTTAS**, the Department of Administration of the State of Arizona and Richard Beissel, Defendants–Appellants, Cross–Appellees.

No. 1 CA–TX 91–006.

Court of Appeals of Arizona, Division 1, Department T.

Nov. 13, 1992.

As Amended on Denial of Reconsideration Jan. 8, 1993.

Petition and Cross-Petition for Review Denied Sept. 21, 1993.*

---

* Martone, J., of the Supreme Court, voted to grant review of Issue A of the Cross-Petition for review.

Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C. by Arthur W. Pederson, Thomas M. Quigley, Ronald P. Adams, Phoenix, for plaintiffs-appellees, cross-appellants.

Grant Woods, Atty. Gen. by Charles S. Pierson, Asst. Atty. Gen., Phoenix, for defendants-appellants, cross-appellees.

OPINION

GRANT, Presiding Judge.

The State of Arizona and Richard Beissel, the state's General Accountant, appeal from a tax court judgment that awarded the following sums as attorney's fees in post-judgment proceedings in a tax refund action: (1) $24,238.00 against the state pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–348; (2) $3,812.00 against the state pursuant to A.R.S. section 12–349; and (3) $1,500.00 against Beissel personally as a sanction for willfully disobeying a court order. The appellee taxpayers cross-appeal from the judgment to the extent it declined to award them attorney's fees incurred in defending three appellate court special actions filed by the state to resist post-judgment orders aimed at forcing it to fund reimbursement of taxes. The appeal and cross-appeal present these issues:

(1) Was A.R.S. section 12–348 inapplicable on the theory that the taxpayers' attorney's fees were incurred in "proceedings involving ... collection of judgment debts" within former A.R.S. section 12–348(F)(4) [now A.R.S. section 12–348(H)(4) ]?

(2) Did the tax court err in awarding additional attorney's fees against the state based on its finding that the state had unreasonably expanded or delayed the tax court proceedings within A.R.S. section 12–349(A)(3) by collaterally attacking the judgment after the court of appeals and the supreme court had declined to accept jurisdiction in appellants' special actions?

(3) Did the tax court err in awarding attorney's fees against Beissel as a sanction for willful disobedience of the court's order?

(4) Did the tax court err in concluding that it lacked authority to award the taxpayers attorney's fees incurred in connection with appellants' post-judgment appellate court special actions?

## FACTS AND PROCEDURAL HISTORY

The taxpayers' complaint alleged that former A.R.S. section 15–991.01 (1988),[1] which levied a tax on all property in the state outside organized school districts, was unconstitutional. On cross-motions for summary judgment, the tax court agreed that section 15–991.01 violated Ariz. Const. Art. IX, section 3.[2] The court enjoined the state and county defendants from levying taxes under former section 15–991.01 for the 1989 tax year and directed the parties to file simultaneous memoranda on the questions of whether affected taxpayers were entitled to receive refunds of 1988 taxes and how such refunds would be determined.

After a series of status conferences on the refund question the tax court ruled:

With respect to the funding of the refund/credit plan, Maricopa County's position is that all of the necessary money for the refund or credit, interest, and administrative costs should be made available before the implementation of the plan. The Department of Revenue's position is that it should be able to hold the money and reimburse Maricopa County for administrative costs.

IT IS ORDERED that the Department of Revenue, or State Treasurer, either advance the total amount of the illegally collected tax plus interest as set forth in the judgment or arrange for the County Treasurer to draft upon a State account when he chooses to make a refund.

IT IS FURTHER ORDERED that the counties will pay the administrative costs as incurred and bill the Department of Revenue. The Department of Revenue is obligated to respond to the billing on a periodic basis as agreed upon by the two agencies but not less than monthly.[3]

On April 25, 1990, the tax court entered formal judgment in accordance with its rulings of July 10, 1989, and February 26, 1990. The judgment provided in pertinent part:

4. The taxes collected by the State of Arizona pursuant to the 1988 Tax shall be credited and/or refunded to each taxpayer paying such taxes.... The State of Arizona is hereby ordered to credit or refund, at the taxpayer's option, ninety-nine and one-half percent (99.5%) of such taxes and interest calculated thereon at the rate of ten percent (10%) per annum from January 1, 1989, until October 1, 1990....

....

6. The State of Arizona is hereby ordered by July 2, 1990, to either:

(A) Provide the funds to any refunding agency to initiate the refund and/or credit procedure stated in paragraph 4 ... or (B) Deposit monies in an account upon which the refunding agency can draw immediately to pay the principal amount of the refund and interest. All costs of administering the refund and/or credit shall be billed by the refunding agency to the State of Arizona on such periodic basis as may be agreed upon, but at least monthly, and shall forthwith be paid by the State of Arizona to the refunding agency. The refunding agency and the State of Arizona shall take such actions as are necessary to comply timely with this judgment.

The state did not appeal.

The Second Regular Session of the Thirty–Ninth Arizona Legislature adjourned

---

1. 1989 Ariz.Sess.Laws Ch. 312, section 1 repealed former A.R.S. section 15–991.01. Section 2 of the same legislation enacted current A.R.S. section 15–991.01 in its place.

2. The tax court held the statute violated the provision of Art. IX, section 3 requiring that "every law imposing a tax shall state distinctly the object of the tax, to which object only it shall be applied."

3. In discussing the events that led up to this ruling, the tax court later stated: "From [July 10, 1989] until the final form of judgment was fashioned, Court and counsel spent much time together in an attempt to fashion a form of judgment which would provide for the affected taxpayers to get their money back at the least cost to the state.... At the request of the state, a timetable was selected that would allow the legislature to fund the refund from funds budgeted in [fiscal year 1990]. The Court decided that, since the state had enacted the unconstitutional statute and was the ultimate recipient of the money collected, the state should reimburse the counties for their administrative costs in effecting the refund."

*sine die* on June 28, 1990, without appropriating any money with which to fund payment of the tax court's judgment. On July 13, 1990, counsel for the Department of Revenue wrote the taxpayers' counsel in part as follows:

> The State Treasurer's office is an administrative agency, without power to raise or appropriate money. Had the Legislature appropriated the funds, the State Treasurer's office would certainly have done its part in the refunding process, but since no such funds presently exist, the State Treasurer is unable to set up the account contemplated by the Court's order. As a result, the refund procedures envisioned by the parties to this lawsuit and outlined in the Court's order cannot take place. Perhaps your clients can still proceed with the usual refund procedures established under Title 42....

On application of the taxpayers, the tax court issued an "order to show cause regarding issuance of warrant and citation for contempt" on July 30, 1990. The order directed nonparty Richard Beissel, General Accountant of the State of Arizona and Assistant Director of Finance, to appear and show cause why he should not be ordered to:

> 1. Issue a warrant in the amount of $11,583,333.33, plus additional interest accruing after July 31, 1990, drawn on the State Treasury in payment of the judgment;
>
> 2. Be compelled to issue such a warrant drawn upon the State Treasury by this Court's power to punish for contempt.

Beissel was served with the order to show cause on August 3, 1990. Through current counsel, he filed a response and motion to quash the order on August 10, 1990, arguing that without a legislative appropriation he had no legal authority to issue the warrant the taxpayers were seeking and would be subject to civil and criminal penalties if he did. After hearing argument, the tax court ordered Beissel to issue warrants to fund the refund/credit procedure contemplated by the judgment and compensate the counties in advance for the cost of administering it.

Beissel petitioned this court for special action (cause no. 1 CA–SA 90–190TX). We granted an interlocutory stay of the tax court's order, but on September 25, 1990, declined to accept jurisdiction of the petition.[4]

The state filed a new petition for special action in the supreme court (cause no. CV–90–0376–SA). The supreme court issued an interlocutory stay on September 28, 1990, but on November 7, 1990, declined to accept jurisdiction of the petition and vacated the stay. Its order also denied the respondent taxpayers' request for attorney's fees.

At the taxpayers' request, on November 8, 1990, the tax court ordered Beissel to execute the required warrants by noon on November 14, 1990, or show cause on November 23, 1990, why he should not be held in contempt and sanctioned appropriately. Beissel did not comply. On November 19, 1990, Beissel filed motions to quash the new order to show cause and for reconsideration of the court's original order directing him to execute warrants to satisfy the judgment. After a hearing, the tax court denied the motions, held Beissel in contempt, and awarded the taxpayers $1,500.00 in attorney's fees against him personally.

The same day, Beissel filed another petition for special action seeking relief in the supreme court (CV–90–0437–SA). By order of November 26, 1990, Justice James Moeller found that Beissel had failed to demonstrate good cause for the issuance of an interlocutory stay and dismissed his petition for special action as moot.

Shortly thereafter, Beissel and his counsel appeared before the tax court. Beissel's counsel advised the court that, be-

---

4. Our order also denied the respondent taxpayers' request for an award of attorney's fees pursuant to A.R.S. sections 12–348 (1992) and 12–2030 (Supp.1991), and the private attorney general doctrine. Our order directed that each side bear its own attorney's fees. The taxpayers petitioned the Arizona Supreme Court for review of our order to the extent it denied their fees request. The supreme court denied review by order of January 16, 1991.

cause it was the court's judgment that would effect the appropriation of state monies to fund the refund process the court had previously ordered, the court's signature was needed as the "authorized signature" on the claim form for the warrants. The tax court's minute entry reflects: "The Court finds that the signature of the Court is a substitute for the Order of the Court as the authority for the warrants to issue. The Court signs the warrants...." The tax court additionally found that Beissel had purged himself of contempt.

The taxpayers later requested an award of additional attorney's fees. After briefing and argument, the tax court granted the request in part and denied it in part. The court declined to award fees incurred in defending the judgment in the state's appellate court special actions, stating: "No authority was cited, nor has the Court found any, which would support a trial court's award of fees for work performed in appellate courts where those courts have themselves considered fee requests and have declined to make awards, and where those courts have not remanded the fee issue to the trial court for determination." The court also found A.R.S. section 12–2030 inapplicable and declined to award fees under it. However, the court assessed $24,238.00 in attorney's fees against the state and the Department of Administration pursuant to A.R.S. section 12–348 "for work performed in this Court and necessitated by the State's eleventh hour assault on the judgement issued in this case."

The court additionally awarded fees of $3,812.00 against the Department of Administration pursuant to A.R.S. section 12–349(A)(3) (1992), finding that the state had "unreasonably expanded" the proceedings in the tax court "when it collaterally attacked the judgment of this Court in proceedings before this Court after the Supreme Court had declined to accept special action jurisdiction of this case." The tax court found that, because the appeal time had passed, the state's position was not warranted by the authorities, and that the state "exceeded the bounds of reason when it re-argued issues already litigated, decid-

ed and finalized by the judgment of this Court." Finally, the court reaffirmed its earlier award of $1,500.00 in fees against Beissel personally.

The state and Beissel moved for rehearing of the attorney's fees awards. In denying the motion, the tax court stated:

The Court feels that it may be worthwhile to clarify the Court's interpretation of A.R.S. § 12–348(F)(4) as it applies to the collection of judgment debts. A.R.S. § 12–348(A) provides for an award of fees and other expenses to any party which prevails against the State by an adjudication on the merits in a civil action brought by the party against the State to challenge the assessment or collection of taxes. The Court has held that the Plaintiffs herein have prevailed against the State by an adjudication on the merits of such an action. Therefore, it is entitled to an award of attorneys' fees pursuant to A.R.S. § 12–348.

The Court holds that it is entitled to such fees and expenses for the entire progress of the litigation, including the enforcement of the judgment.

To the extent that it is necessary to support its ruling herein, the Court interprets A.R.S. § 12–348 not to contemplate a proceeding against the state to collect a judgment against the state. The court is of the opinion that the language in A.R.S. § 12–348(F)(4) which references the collection of judgment debts contemplates a proceeding in which a judgment creditor seeks to enforce the collection of a judgment debt against a debtor to whom the state is somehow obligated. The state is thus brought into the litigation as a result of its relationship with the debtor. In such a case fees are precluded. In such a case, the state can proceed to litigate whatever its rights are in the relationship between it and the judgment debtor and thus not be a nominal party.

The tax court entered "Partial Judgment" in accordance with its attorney's fees rulings. The state and Beissel timely appealed and the taxpayers timely cross-appealed. We have jurisdiction pursuant

to A.R.S. sections 12–2101(B) (Supp.1991) and 12–120.21(A)(1) (1992).[5]

## DISCUSSION

*The Tax Court's Award of Attorney's Fees Pursuant to A.R.S. Section 12–348(A)*

### 1. *A.R.S. section 12–348*

■ The tax court awarded $24,238.00 in attorney's fees against the state pursuant to A.R.S. section 12–348(A), which at that time provided: "In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state which prevails by an adjudication on the merits in any of the following: ... 2. A civil action brought by the party against the state to challenge the assessment or collection of taxes." [6] A.R.S. section 12–348(F)(4), however, provided: "This section does not: ... 4. Apply to *proceedings involving* eminent domain, foreclosure, *collection of judgment debts* or proceedings in which the state is a nominal party." (Emphasis added).

Thus we are faced with the question of whether since a taxpayer may recover attorney's fees in an action for refund of taxes, the taxpayer can also recover attorney's fees for post-judgment proceedings to force the state to actually pay the refund monies. It has been well established that the taxpayer can recover attorney's fees in an action for refund of taxes. *Gosnell Development Corp. v. Ariz. Dept. of Revenue*, 154 Ariz. 539, 744 P.2d 451 (App. 1987); *Mountain States Telephone & Telegraph Co. v. Ariz. Corp. Comm'n*, 160 Ariz. 350, 773 P.2d 455 (1989).

The state argues that the post-judgment proceedings, in which the taxpayers incurred the attorney's fees they sought to recover, amounted to no more than proceedings for the collection of a judgment debt owed by the state, and that by virtue of the exemption in A.R.S. section 12–348(F)(4), the tax court had no authority to award fees pursuant to section 12–348(A). The state urges that nothing in the text of the statute supports the tax court's view that A.R.S. section 12–348(F)(4) renders section 12–348(A) inapplicable only in proceedings to collect a judgment debt owed by a party other than the state through realizing on assets within the state's control.

The taxpayers do not actively promote the tax court's rationale. They seek to avoid the effect of A.R.S. section 12–348(F)(4) by arguing that the post-judgment proceedings in this case did not concern collection of a judgment "debt," but were instead aimed at forcing the state to fund the refund procedure specifically ordered by the tax court's unappealed judgment of April 25, 1990. Relying on *Navajo Tribe v. Arizona Department of Administration*, 111 Ariz. 279, 528 P.2d 623 (1974) for the proposition that the state has no power over funds unless it has both legal and equitable title in them, the taxpayers contend that their claim for return of the illegally collected taxes did not arise from a judgment debt, but instead from an "order of restitution or refund." In addition, the taxpayers argue that because A.R.S. section 42–204(C) (1991) provides for illegally collected taxes to be refunded, the legislature could not have intended that the exclusion of attorney's fees for "collection of judgment debts" in A.R.S. section 12–348(F)(4) would apply in their situation. Finally, they urge that the award of fees under A.R.S. section 12–348(A) was authorized independently by the unappealed judgment's reservation of power to award additional attorney's fees.

We agree with both the tax court and the taxpayers on this issue. A.R.S. section 12–348 is the Arizona version of the federal Equal Access to Justice Act (28 U.S.C. § 2412), although it differs in many respects from the federal act. The express

---

**5.** The appeal is assigned to Department T of this court pursuant to A.R.S. section 12–120.04(G).

**6.** Effective September 1, 1990, 1990 Ariz.Sess. Laws Ch. 360, section 1 amended A.R.S. section 12–348 to make awards of attorney's fees in tax matters discretionary with the court. *See* current A.R.S. section 12–348(B).

legislative purpose of A.R.S. section 12–348 is to neutralize or reduce the economic deterrent faced by private parties seeking to litigate against unreasonable governmental action. *New Pueblo Constructors, Inc. v. State,* 144 Ariz. 95, 696 P.2d 185 (1985). The Arizona statute contains fewer restrictions on fee awards against the state than does its federal counterpart. The Arizona legislature, by including so few qualifications in A.R.S. section 12–348, expressed a strong public policy to reduce the economic deterrents individuals faced in contesting governmental action. *Estate of Walton v. State,* 164 Ariz. 498, 794 P.2d 131 (1990).

The tax court's limiting construction of A.R.S. section 12–348(F)(4) furthers this public policy. A.R.S. section 12–348(A)(2) unequivocally grants a prevailing taxpayer the right to recover attorney's fees in an action against the state to challenge the assessment or collection of taxes. Subsection (F)(4) renders section 12–348 inapplicable to proceedings involving the "collection of judgment debts." Contrary to the state's argument, it is both illogical and improbable that the legislature would have intended to permit a taxpayer to recover the attorney's fees he incurs in establishing his right to receive a refund of taxes paid, and at the same time to preclude him from recovering the attorney's fees the state compels him to incur in enforcing that same right. We agree with the tax court that the reference in A.R.S. section 12–348(F)(4) to "proceedings involving ... collection of judgment debts" can only have been intended to refer to garnishments and other similar proceedings in which the state functions as a disinterested stakeholder. The catchall phrase "proceedings in which the state is a nominal party" with which subsection (F)(4) concludes tends to support this interpretation.

Having so decided we need not consider the taxpayers' two additional arguments that an order to refund illegally collected taxes fails to create a "judgment debt" or that the tax court's award of fees under

A.R.S. section 12–348(A) was independently authorized by the final judgment's reservation of power to grant additional fees.

## 2. *A.R.S. Section 12–2030 and the Private Attorney General Doctrine*

■ The taxpayers contend that even if A.R.S. section 12–348(A) did not authorize the $24,238.00 award of attorney's fees, the award should nevertheless be sustained on appeal as independently authorized by A.R.S. section 12–2030 or the "private attorney general doctrine" adopted in *Arnold v. Arizona Department of Health Services,* 160 Ariz. 593, 775 P.2d 521 (1989). Citing *Maricopa County v. Corporation Commission of Arizona,* 79 Ariz. 307, 289 P.2d 183 (1955), however, the state urges that the taxpayers' failure to cross-appeal from the fee judgment, to the extent that the trial court rejected these two theories of recovery, precludes the taxpayers from relying on them to sustain the award on appeal. We disagree with the details of the state's analysis on this point.

Our opinion in *Bowman v. Board of Regents,* 162 Ariz. 551, 785 P.2d 71 (App. 1989), extensively analyzed *Maricopa County* and other controlling Arizona authorities on the cross-issue vs. cross-appeal question.[7] We summarized our analysis in a three-part statement:

In the absence of a cross-appeal, an appellee may raise a cross-issue in its answering brief only when it meets these criteria:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, *whether or not the trial court ultimately rejected or simply ignored the issue in any disposition;* and

(3) The cross-issue must not result in an enlargement of appellee's rights or a

---

7. Rule 13(b) of the Arizona Rules of Civil Appellate Procedure has been amended effective December 1, 1992, to clarify the cross-appeal pro-cedure. The new rule is a change from the case law regarding "forum defenses" in *Bowman v. Board of Regents.*

lessening of appellant's rights on appeal.

Issues that do not meet this test, assuming they are otherwise appealable, must be the subject of a timely notice of cross-appeal.

*Id.* at 559, 785 P.2d at 79 (emphasis added). *Bowman*'s three-part test makes it clear that, contrary to the state's analysis, a trial court's mere rejection of an appellee's alternative contention is not sufficient in and of itself to require a cross-appeal as the only proper vehicle for raising the contention in support of the judgment.

It is certainly true that the taxpayers raised these theories in the tax court and that the tax court considered them. It is also true that the taxpayers' contentions support rather than attack the judgment. However, unlike A.R.S. section 12–348, which limits reimbursement of attorney's fees to seventy-five dollars per hour unless the trial court finds that a higher rate is justified under specified circumstances, *see* former A.R.S. section 12–348(D)(2), neither A.R.S. section 12–2030 nor the "private attorney general doctrine" imposes any express limitation on the hourly reimbursement rate to be applied in making an award. *See Arnold v. Arizona Department of Health Services*, 160 Ariz. 593, 775 P.2d 521 (1989). By prevailing on either alternative theory on appeal, the taxpayers would necessarily establish that they were entitled to seek an augmented award of attorney's fees calculated without reference to any hourly rate cap. The state argues that because the taxpayers would thereby enlarge their own rights and lessen those of the state, the rationale of *Bowman* should preclude us from considering these alternative contentions in support of the tax court's award under A.R.S. section 12–348(A). We do not agree.

First, in light of the supreme court's amendment of Rule 13(b) (see n. 7) subsequent to this case being at issue, we must recognize that *Bowman* loses much of its impact.

Second, the theory does not enlarge the taxpayers' rights. The right involved here is the right to recover attorney's fees. That right already existed prior to these theories being raised. These theories only present alternative ways in which the right may be exercised. Furthermore, the taxpayers are not asking for attorney's fees in excess of those awarded by the tax court judge; therefore, they are not seeking to expand the judgment, but merely to uphold it on appeal.

■ That leads to the third point, which is that the taxpayers were not aggrieved by the trial court's award of attorney's fees in the amount of $24,238.00. A party may not appeal from any portion of a judgment that does not aggrieve it. *State v. O'Connor*, 171 Ariz. 19, 24, 827 P.2d 480, 485 (App.1992) (*citing Matter of Gubser*, 126 Ariz. 303, 306, 614 P.2d 845, 848 (1980)). A party is aggrieved by any part of a judgment that operates to deny it some personal or property right or to impose a substantial burden on it. *Id.* The taxpayers could not have appealed from the award of attorney's fees (except to contest the amount if it had been less than requested). Since the state appealed this fee award, the taxpayers properly presented alternative theories on which the award could be upheld by means of a cross-issue as opposed to a cross-appeal.

Having determined that we may properly consider whether the fee award may also be upheld under A.R.S. section 12–2030 or pursuant to the "private attorney general" theory we turn to the merits of these two issues.

*Arizona Revised Statutes*
*Section 12-2030*

■ Under A.R.S. section 12–2030 a court *shall* award fees and expenses to any party (other than the state) that prevails on the merits in a civil action brought by the party against the state or any political subdivision of the state to compel an officer thereof to perform an act imposed by law as a duty of the officer. Such an action is in the nature of *mandamus*. *Arnold v. Ariz. Bd. of Pardons and Paroles*, 167 Ariz. 155, 805 P.2d 388 (App.1990). The taxpayers' action in the case before us was

in the nature of *mandamus* and comes under the fee provision of A.R.S. section 12–2030. This court has held that *mandamus* is a proper remedy to enforce a political entity's duty to pay a judgment debt and to compel an appropriation with which to pay the judgment. *Garcia v. City of South Tucson,* 135 Ariz. 604, 663 P.2d 596 (App.1983). Therefore the instant case was a proper *mandamus* action, and the taxpayers were entitled to the award of fees under A.R.S. section 12–2030. Having so decided we need not reach the question of whether the fee award could be sustained under the "private attorney general" theory. We affirm the tax court's award of $24,238.00 against the state.

### The Tax Court's Award of Attorney's Fees Pursuant to A.R.S. Section 12–349(A)(3)

■ The tax court awarded the taxpayers $3,812.00 in attorney's fees pursuant to A.R.S. section 12–349.[8] The tax court found that, by continuing to contest the court's order directing the execution of warrants after the court of appeals and supreme court had both declined jurisdiction of its petitions for special action, the state had unreasonably expanded the proceedings before the tax court and had "exceeded the bounds of reason when it reargued issues already litigated, decided and finalized by the judgment of this Court."

The state now contends that the tax court erred in awarding attorney's fees under A.R.S. section 12–349. The state urges that the judgment of April 25, 1990, did not specify the means by which it was to be satisfied. The state argues that its challenge to the court's order of July 30, 1990, directing Beissel to execute warrants on the state treasury therefore did not consti-tute a collateral attack on the judgment. The state also lists a number of issues it contends were never raised or decided in the judgment and were newly brought into question by the tax court's order directed to Beissel.

The taxpayers argue in response that the tax court's judgment of April 25, 1990, expressly incorporated the manner by which their refunds were to be made by ordering the state to fund the refund or credit procedure by July 2, 1990, and to take such actions as would be necessary to timely comply with the judgment. They argue in addition that, before the April judgment was entered, the state presented to the tax court several of the arguments it later relied on in its appellate court special actions.

On this record we cannot find that the tax court abused its discretion in making its award of $3,812.00 in attorney's fees against the state under A.R.S. section 12–349(A)(3). *Hohokam Resources v. Maricopa County,* 169 Ariz. 596, 821 P.2d 257 (App.1991). Although the parties' briefs address and evaluate as a single unit the state's entire series of procedural challenges to the tax court's August order requiring Beissel to execute warrants, the tax court's award of fees under A.R.S. section 12–349 was in fact limited only to services rendered in the tax court *following* the supreme court's refusal to accept jurisdiction of the state's first special action in that court. As we read the record, by that point the state had had ample opportunity to present to the tax court and to both appellate courts all its arguments opposing the tax court's order for execution of warrants. Whether or not the state had actually succeeded in doing so by then, the

---

**8.** A.R.S. section 12–349 provides in part:

A. Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced or appealed in a court of record in this state, the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:

1. Brings or defends a claim without substantial justification.
2. Brings or defends a claim solely or primarily for delay or harassment.
3. *Unreasonably expands or delays the proceeding.*
4. Engages in abuse of discovery.
(Emphasis added).

tax court was well within its discretion in determining that the state's continuing resistance to the court's August order unreasonably delayed the proceedings in the tax court and was not supported by any reasonable legal theory. *Ariz. Tax Research Ass'n v. Dep't. of Revenue,* 163 Ariz. 255, 787 P.2d 1051 (1989). Therefore we affirm this award of $3,812.00 against the state.

## The Tax Court's Award of Attorney's Fees Against Beissel for Willful Disobedience of the Court's Order

We next consider whether the tax court erred or abused its discretion in awarding $1,500.00 in attorney's fees against Beissel personally pursuant to *Perry v. O'Donnell,* 759 F.2d 702 (9th Cir.1985) for resisting the court's order that he execute warrants to pay the taxpayers' judgment.

### 1. *Legal Basis for Award*

■ Beissel and the state argue that *Perry*'s rationale could not authorize the tax court's award of fees against Beissel. They argue that *Perry* adopted the position that a court could award attorney's fees for disobedience to a court order only because in that case no statutory remedy existed that could have applied under the facts. They point out that in this case A.R.S. section 12–349 was available to the tax court. They assert that section 12–349 provided "precisely the relief" that *Perry* was "forced to grant through judicial action," and contend that *Perry* simply did not apply.

We disagree. Contrary to the taxpayers' argument, A.R.S. section 12–349 does not expressly empower a trial court to impose an award of attorney's fees against a party as a sanction for disobedience to a court order. *See* text of A.R.S. section 12–349(A), quoted at n. 8, p. 19. Moreover, we do not read the *Perry* opinion as holding that the trial court's inherent power to sanction contempt would include authority to award attorney's fees only if no applicable statutory fees remedy existed. The issue in *Perry* was not whether under those circumstances the trial court had had authority to grant fees for contempt as a

general proposition; but, rather, whether the trial court erred in doing so, absent an express finding that the contemnor's disobedience had been "willful." 759 F.2d at 704–706.

Finally, our supreme court has recognized a similar inherent power in the superior courts of this state:

> Where there is a complete and repeated disregard of a court order and where there is no reasonable justification for its breach, a court might, in its discretion, award attorney fees as a sanction. *See* 6 J. Moore, Federal Practice ¶ 54.77(2) (2d Ed.1976). The integrity of the courtroom and of the judicial process requires that the trial court have this remedy in exceptional circumstances.

*Taylor v. Southern Pacific Transportation Co.,* 130 Ariz. 516, 523, 637 P.2d 726, 733 (1981). Like the *Perry* court, the *Taylor* court did not condition the existence of this inherent power on the absence of an applicable statute authorizing a fees award. The tax court had legal authority to impose an award of attorney's fees for willful disobedience to its orders.

### 2. *Propriety of the Award under these Facts*

■ The question remains whether the tax court's decision to award $1,500.00 in attorney's fees against Beissel was within its discretion under the particular circumstances of this case. To resolve this question, we first must briefly review the circumstances that actually faced Beissel leading up to the award.

Beissel was first made a party to this case when he was served with an order directing him to issue warrants for sums in excess of $11 million for which he knew that no legislative appropriation existed. His counsel, an attorney who had not previously participated in the case, presumably advised him—consistently with the position he took on Beissel's behalf in the tax court—that Beissel had no legal authority to execute any such warrants.

There was no lack of case law in support of this position. As our supreme court

stated in *Crane v. Frohmiller*, 45 Ariz. 490, 45 P.2d 955 (1935):

> Section 5 of article 9 of the Constitution of Arizona reads in part as follows:
>
> "... No money shall be paid out of the State treasury, except in the manner provided by law."
>
> Provisions of this nature appear in many state constitutions, and they have universally been interpreted to mean that the people's money may not be expended without their consent either as expressed in the organic law of the state or by constitutional acts of the legislature appropriating such money for a specified purpose.
>
> ....
>
> ... And an appropriation need not be made in any particular form of words nor in express terms; all that is required being a clear expression of the legislative will on the subject.[9]

*Id.* at 495–497, 45 P.2d at 958 (citations omitted). *Accord Cockrill v. Jordan*, 72 Ariz. 318, 235 P.2d 1009 (1951); *Eide v. Frohmiller*, 70 Ariz. 128, 216 P.2d 726 (1950); *McDougall v. Frohmiller*, 61 Ariz. 395, 150 P.2d 89 (1944); *O'Neil v. Goldenetz*, 53 Ariz. 51, 85 P.2d 705 (1938). In addition, at all times material to this litigation A.R.S. section 35–189 (1990) has provided:

> In all instances in which the law recognizes a claim for money against the state, but no appropriation has been made by law to pay such claim, the department of administration shall audit and adjust the claim, if presented to it, and give the claimant a certificate of the amount thereof, under its official seal if demanded, and shall report it to the next succeeding regular session of the legislature.

Further, A.R.S. section 35–154 (1990) provides:

> A. No person shall incur, order or vote for the incurrence of any obligation against the state or for any expenditure not authorized by an appropriation and an allotment. Any obligation incurred in contravention of this chapter shall not be binding upon the state and shall be null and void and incapable of ratification by any executive authority to give effect thereto against the state.

A.R.S. section 35–197 (1990) declares any violation of section 35–154, or any other provision of the chapter in which it appears, a class 1 misdemeanor.

Beissel moved to quash the tax court's order to show cause. The tax court denied his motion and ordered him to execute warrants to fund the refund/credit procedure on or before August 27, 1990. On August 23, 1990, this court stayed the tax court's order pending determination of Beissel's special action, but later declined jurisdiction and vacated the stay. Three days afterward, Beissel obtained another interlocutory stay, this time from the Arizona Supreme Court. That court also ultimately declined jurisdiction and vacated its stay.

The following day the tax court again ordered Beissel to execute warrants, giving him until November 14, 1990. Rather than comply, Beissel moved to dissolve the tax court's order. In his motion, he presented several arguments he had already made in the tax court and several he had made for the first time in his special actions in this court and in the supreme court. The tax court rejected the motion, held Beissel in contempt and assessed $1,500.00 in attorney's fees against him personally.

In our opinion, these circumstances fall short of "complete and repeated disregard of a court order" with "no reasonable justification...." *Taylor v. Southern Pacific Transportation Co.*, 130 Ariz. at 523, 637

---

9. *Crane* continues: "[T]here are two limitations, not as a rule expressed in precise language in the various state Constitutions, but nevertheless almost universally upheld, as implied therein. The first is that the legislature may not delegate its power to make laws to any other person or body, except when authorized by the Constitution.... The second limitation is that, when a legislative appropriation is directed to be paid out of the general fund, but not to comprise the whole of such fund, the appropriation must be specific as to a maximum amount and cannot be left indefinite and uncertain in this regard...." 45 Ariz. at 497, 45 P.2d at 958 (citations omitted).

P.2d at 733. As of the time the tax court held him in contempt, Beissel had disregarded its order only once without also filing a timely appellate court challenge. On that occasion, Beissel filed a motion attacking the merits of the tax court's order on the third business day after expiration of the deadline set by the court. In addition, Beissel was plainly acting on the advice of counsel and with continuing awareness of settled constitutional, statutory and case law principles he could reasonably have believed might subject him personally to civil and criminal liability if he complied with the court's directive to execute warrants without a legislative appropriation.

Another consideration also militates against the view that Beissel's actions constituted complete, repeated and unjustified disregard of the tax court's order. The tax court consistently ordered Beissel himself to execute appropriate warrants personally, on the theory advanced by the taxpayers that, under A.R.S. sections 35–142(B) (1990) and 41–732(A) and (B)(1) (1992), only the state's general accountant could do so. In the end, however, the tax court effectively abandoned this theory and itself signed the claim form, after which Beissel signed the warrants. This conclusively revealed Beissel's status as that of an unwilling and, ultimately, unimportant pawn in a struggle between the judicial and legislative branches of government. His resistance to the tax court's order was based on his understandable fear of personal liability and on the advice of counsel. His compliance with the order in question proved superfluous in the final analysis. Therefore the tax court abused its discretion in assessing attorney's fees against Beissel personally. We reverse the award of $1,500.00 against Beissel.

*The Tax Court's Refusal to Award Attorney's Fees for Services Rendered by the Taxpayers' Counsel in Defending Beissel's Appellate Court Special Actions*

In opposing Beissel's petition for special action in this court, the taxpayers requested an award of attorney's fees pursuant to A.R.S. sections 12–348 and 12–2030 and the "private attorney general doctrine." After

we declined to accept jurisdiction, we denied the request, stating that: "[e]ach side is to bear its own costs and fees." The supreme court denied the taxpayers' petition for review of this order.

In opposing Beissel's first petition for special action in the supreme court, the taxpayers requested fees pursuant to A.R.S. sections 12–348, 12–349, 12–2030 and the "private attorney general doctrine." The supreme court's order declining jurisdiction of the petition stated: "FURTHER ORDERED: Denying taxpayers their attorney's fees."

The taxpayers do not assert that they requested an award of attorney's fees from the supreme court in opposing Beissel's final petition for special action in that court, and nothing to which we are referred in the record so indicates.

The taxpayers filed a request for supplemental attorney's fees in the tax court on December 5, 1990, after the supreme court had dismissed Beissel's last special action and the tax court had executed warrants to fund the refund/credit procedure. The taxpayers sought an award of fees pursuant to A.R.S. sections 12–348, 12–349, 12–2030 and the "private attorney general doctrine" for services performed in all courts from March 30 through November 28, 1990. The tax court declined to award the taxpayers any fees for services performed in opposing Beissel's special actions in this court and the supreme court. The court determined it lacked authority to make such an award.

1. *A.R.S. Section 12–348*

■ Fees expended by a party to establish its entitlement to fees under A.R.S. section 12–348 are compensable. *Lincoln Fosseat Assoc. v. Arizona Dep't. of Revenue,* 167 Ariz. 36, 804 P.2d 765 (App.1990).

As we held above, A.R.S. section 12–348(A) was available to the taxpayers in connection with the post-judgment litigation for which they sought attorney's fees in this case.

2. *A.R.S. Section 12–2030*

■ A.R.S. section 12–2030 provides in part:

A. A court shall award fees and other expenses to any party other than this state or any political subdivision thereof which prevails *by an adjudication on the merits in a civil action brought by the party against the state or any political subdivision thereof to compel a state officer or any officer of any political subdivision thereof to perform an act imposed by law as a duty on the officer.*

(Emphasis added). Because neither this court nor the supreme court took jurisdiction in Beissel's special actions, the taxpayers did not prevail in those actions by adjudications on the merits. The appellate courts' denials of fee awards under A.R.S. section 12–2030, therefore, might reasonably be viewed as recognizing that fact. As to the final special action in the supreme court in which the taxpayers did not request fees, we hold that they cannot do so from the trial court. A party who fails to request an award of attorney's fees in the trial court is precluded from asking the appellate court to award fees incurred in the trial court. *Lacer v. Navajo County,* 141 Ariz. 392, 687 P.2d 400 (App.1984). The reasoning of the *Lacer* court applies here. The *Lacer* court did not believe it was appropriate to permit a party to forego a ruling on attorney's fees in the trial court, thereby shifting discretion from the trial court to the appellate court. For a party to fail to request fees for an appeal or special action from the appellate court and then shift the discretion to the trial court by asking the trial court to award fees incurred in the appellate court is likewise inappropriate. Therefore, the trial court properly denied fees for the third special action. As to the other two special actions, since the requests for fees were denied by the appellate court, the rulings are *res judicata* and the trial court proper-

ly denied these fees. We affirm the trial court's denial of attorney's fee awards to the taxpayers for defending the three special actions.

3. *A.R.S. Section 12–349 and the "Private Attorney General Doctrine"*

■ Rule 4(f), Arizona Rules of Procedure for Special Actions, permits parties to special actions to claim attorney's fees as in any other civil action. An appellate court that entertains a special action may award fees whether it renders a decision on the merits or merely declines to accept jurisdiction. *Id.*[10]

Neither A.R.S. section 12–349 nor the "private attorney general doctrine" restricts appropriate fee awards to parties who prevail on the merits. Accordingly, in contrast to the taxpayers' requests for fees under A.R.S. sections 12–348 and 12–2030, the court of appeals' and supreme court's refusals to accept jurisdiction and rule on the merits did not preclude those courts from awarding fees under either A.R.S. section 12–349 or the "private attorney general doctrine." In our opinion those courts' affirmative denials of fee awards constituted *final adjudications* of the taxpayers' claims on those grounds for services rendered in opposing Beissel's first two special actions, and the tax court correctly determined it had no legal authority to rule on them itself.

As we observed before, the taxpayers did not request an award of fees in connection with Beissel's second and final special action in the supreme court. They plainly had a potential claim for such an award in that court, but failed to assert it within the time provided by Rule 4(f), Arizona Rules of Procedure for Special Actions. Contrary to the taxpayers' argument, we do not view their appellate court special actions as equivalent to mere expedited appeals that amounted to continuations of the action they brought initially in the tax court. Each special action was an indepen-

---

**10.** Rule 4(f), Arizona Rules of Procedure for Special Actions, provides in part: "In a special action in an appellate court, a request for attorneys' fees shall be made in the pleadings or by motion filed and served prior to oral argument or submission of the special action. Within ten days after the court has issued an order declin-

ing jurisdiction or the clerk has given notice that a decision has been rendered, a party entitled to costs or attorneys' fees may file in the appellate court a statement of costs including attorneys' fees, and objections and a reply may thereafter be filed...."

dent proceeding with its own pleadings, parties and final resolution. Accordingly, by failing to present to the supreme court their claim for fees incurred in opposing Beissel's second special action in that court, the taxpayers waived their claim. The tax court properly declined to grant the taxpayers' claim for such fees.

## CONCLUSION

The tax court properly awarded the taxpayers attorney's fees for services performed in forcing the state to fund the judgment of April 25, 1990. The tax court did not err or abuse its discretion in awarding attorney's fees against the state pursuant to A.R.S. section 12–349 for services performed in the tax court following the supreme court's refusal to accept jurisdiction in Beissel's first special action in that court. The tax court abused its discretion in awarding attorney's fees against Beissel personally. Finally, the tax court did not abuse its discretion in refusing to grant the taxpayers an award of attorney's fees in connection with Beissel's three unsuccessful appellate court special actions.

 The taxpayers have requested an award of attorney's fees on appeal pursuant to A.R.S. sections 12–348 and 12–349. We grant the request under A.R.S. sections 12–348 and 12–349(A)(3) because we determine that the state unreasonably expanded and delayed the action by the taxpayers to collect the refund. By its terms, A.R.S. section 12–349 authorizes appellate courts to award attorney's fees as sanctions for frivolous appeals, harassment or dilatory tactics. The ultimate successful party is entitled to recover reasonable attorney's fees for all stages of the litigation, including appellate review. *Leo Eisenberg & Co., Inc. v. Payson,* 162 Ariz. 529, 785 P.2d 49 (1989). The taxpayers are directed to comply with Rule 21(c), Arizona Rules of Civil Appellate Procedure. *See* n. 8.

Affirmed in part; reversed in part.

LANKFORD and TOCI, JJ., concur.